FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JAN 27 2016  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                :

ZAHEERA P. KHAN,                           :

             Plaintiff,               :

   -against-                      :

PINNACLE CREDIT SERVICES, LLC,     :

             Defendant.           :

                                :

------------------------------------------------------------------ X

15-CV-2266 (ARR)(MDG)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

       Plaintiff Zaheera P. Khan brings this suit against Pinnacle Credit Services, LLC

("Pinnacle") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et

seq. ("FDCPA"). Specifically, plaintiff alleges that when she called Pinnacle, a debt collector, to

dispute a debt which had been reported to credit bureaus, she was redirected to Pinnacle's law

firm to submit her dispute. Plaintiff alleges that this practice violated the FDCPA's prohibition of

"false, deceptive, or misleading representations in connection with the collection of any debt," as

well as the act's ban on the use of "unfair or unconscionable means to collect or attempt to

collect any debt." 15 U.S.C. §§ 1692e-f. Pinnacle now moves to dismiss plaintiff's amended

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below,

the court finds that defendant's actions did not violate the FDCPA, and plaintiff's amended

complaint is dismissed.

## CONSIDERATION OF TRANSCRIPT

       All facts relevant to this motion arise from a phone call placed by plaintiff and her agent,

an attorney at Asset Protection & Management, Inc., to Pinnacle on February 27, 2015. The

contents of this phone call are disputed, however. A transcript of the call that defendant has submitted in support of its motion to dismiss differs significantly from allegations relating to quotations from the call as set forth in plaintiff's amended complaint. See Decl. of Daniel Ginzburg in Supp. of Def.'s Mot. to Dismiss Am. Compl. ("Ginzburg Decl."), Dkt. #16-4 ¶2; Am. Compl., Dkt. #11 ("Am. Compl.") ¶¶ 18-25. As an initial matter, the court must therefore decide whether the transcript of the phone call may be considered in deciding this motion to dismiss the amended complaint.

Plaintiff maintains that the transcript of the call may not be considered at this stage unless defendant's motion is converted into one for summary judgment and plaintiff is granted the opportunity to conduct discovery. Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Br."), Dkt. #15 at 4-6. However, the Second Circuit has held that a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992) (citing Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989)). By alleging direct quotations from the phone call as the basis of her complaint, plaintiff has apparently incorporated her representative's phone conversation with defendant into her complaint such that a transcript of that conversation may appropriately be considered at this time.

Even if the conversation were not considered to be incorporated into the complaint, the transcript would still properly be before the court as the recorded conversation forms the entire basis for plaintiff's allegations. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) ("even if not attached or incorporated by reference, a document "upon which [the complaint] solely relies and which is integral to the complaint" may be considered by the court in ruling on such a

2

motion) (quoting Cortec Indus., Inc., 949 F.2d at 47) (emphasis added by Roth court). While the

courts in Roth and Cortec referred specifically to the use of extrinsic documents relied upon in a

plaintiff's complaint, the court sees no reason why the same rule would not apply to recorded

statements that form the sole basis of plaintiff's allegations. This is particularly true where, as

here, an authentic recording kept as part of defendant's regular business activity, and a transcript

of that recording are available. See Decl. of Dustin Nelson in Supp. of Def.'s Mot. to Dismiss

Am. Compl., Dkt. #16-2 ¶ 3.

　　　　To ensure the reliability of the transcript, the court gave plaintiff an opportunity to object

to its accuracy. Before ruling on this motion, the court ordered that if plaintiff objected to the

accuracy of the transcript, the parties were to conduct limited discovery with respect to the

recording of the phone call in question. See Order dated Dec. 23, 2015. During this discovery

period, defendant was to provide plaintiff with an authenticated copy of the recording. Id. If this

limited discovery gave rise to either party's desire to submit supplemental briefing contesting the

accuracy of the transcription, then the parties were ordered to file supplemental briefs by January

16, 2016. Id. As no supplemental briefs were filed by this time, the court accepts the accuracy of

the transcript as undisputed. Further, because plaintiff was given this additional opportunity to

respond to the transcript defendant provided, the concerns associated with considering the

transcript as extrinsic evidence on a motion to dismiss are effectively eliminated. See Cortec, 949

F.2d at 48 ("Where plaintiff has actual notice of all the information in the movant's papers and

has relied upon these documents in framing the complaint the necessity of translating a Rule

12(b)(6) motion into one under Rule 56 is largely dissipated.").

## BACKGROUND

Plaintiff alleges that defendant began its debt collection efforts with plaintiff by reporting her credit card debt to credit bureaus. Am. Compl. ¶¶ 11, 13. As a result of this reporting, defendant and her agent, Alberto Reyes III, called defendant on February 27, 2015 in order to obtain information about plaintiff's account. Id. ¶ 12. The following conversation ensued between Mr. Reyes and Pinnacle's representative, identified as Claire:

**Claire**: Thank you for calling Pinnacle Credit Services.

**Mr. Reyes**: Hi, I'm calling on behalf of one of our clients.  Can I give you her social and [inaudible] got the power of attorney that we sent over last month?

**Claire**: Uh, yeah, what's your social?

**Mr. Reyes**: OK, so, it's under Zaheera Khan.  Her social is xxx-xx-2116.

**Claire**: OK, I am showing that we have the account being handled by a company called Crosstown Law, and they have been assigned to handle the account for us. Do you want to speak with them?  I can give you the phone number for them and then transfer you over.

**Mr. Reyes**: OK, what's their phone number?

**Claire**: Their phone number is 855 . . . .

**Mr. Reyes**: 855?

**Claire**: Mmhmm.

**Mr. Reyes**:  Aha.

**Claire**: 389 . . . .

**Mr. Reyes**: 389.

**Claire**: 8696.

**Mr. Reyes**: 8696.  And my client, uh, wants to dispute his [sic] account, so can I submit the dispute with you?

**Claire**: No, everything goes through them.

**Mr. Reyes**: Everything's going through them.  OK.

**Claire**: Alright, and I can transfer you over.

**Mr. Reyes**: OK, thank you.

**Claire**: You're welcome.  You may hear a brief recorded message before they pick up.  One moment.

Ginzburg Decl. ¶ 2. As a result of this conversation, plaintiff filed suit alleging numerous violations of the FDCPA. On November 12, 2015, defendant filed the instant motion to dismiss plaintiff's amended complaint.

## STANDARD OF REVIEW

In order to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the court must usually accept all factual allegations in the complaint as true at the pleading stage, this case is the rare exception to that rule. As discussed above, defendant has offered a transcript, based on an authentic recording, of a conversation from which plaintiff directly quotes in her amended complaint. As plaintiff was given an opportunity to review the recording and submit supplemental briefing if she disputed its accuracy, the court accepts the transcript, rather than plaintiff's complaint, as the accurate basis for allegations pertaining to the phone call in question. All other factual allegations in plaintiff's complaint are accepted as true, and all reasonable

inferences are drawn in plaintiff's favor. <u>Twombly</u>, 550 U.S. at 555-56.

## DISCUSSION

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To ensure that the statute protects the most vulnerable population of debtors, courts are to view debt collection communications from the perspective of the "least sophisticated consumer." <u>Greco v. Trauner, Cohen & Thomas, L.L.P.</u>, 412 F.3d 360, 363 (2d Cir. 2005) (quoting <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318-19 (2d Cir. 1993)).

While this standard is intended to protect the vulnerable, even the "least sophisticated consumer" is presumed to "possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." <u>Clomon</u>, 988 F.2d at 1319. On the whole, this standard is intended to serve the dual purpose of "ensur[ing] the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices" while still "protect[ing] debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." <u>Id.</u> at 1320.

### A. Whether Defendant's Representations Were False or Misleading

Plaintiff first argues that defendant's statements during the February 27th phone call violated the FDCPA's requirement that debt collectors not use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Thus, the question the court must decide is whether, from the perspective of the least sophisticated consumer, the disputed communication is "open to more than one reasonable

interpretation, at least one of which is inaccurate." Clomon, 988 F.2d at 1319.

On its face, even viewed from the perspective of the least sophisticated consumer, the court finds nothing ambiguous about defendant's statements during the phone call. Plaintiff argues that defendant's use of the word "assign" and statement that "everything goes through them [referring to Crosstown Law]" could lead to a reasonable interpretation that Crosstown Law, rather than defendant, was now the owner of plaintiff's debt. Pl.'s Br. at 7-8. This interpretation takes defendant's statements out of context. While it is true that "assign" could be understood to mean a "transferring [of] property, rights, or interest," id. at 7, defendant did not say that the account was "assigned" to Crosstown Law. Rather, defendant said that Crosstown Law had "been assigned to handle the account for us." Ginzburg Decl. ¶ 2 (emphasis added). This language makes clear that defendant was still the owner of the account, and that Crosstown Law was simply an agent tasked with working on the account on defendant's behalf. To accept plaintiff's interpretation would be to allow the sort of "bizarre or idiosyncratic interpretations" that are not credited in this circuit. Clomon, 988 F.2d at 1320.

Nor is defendant's comment that "everything goes through them" subject to misinterpretation. While plaintiff argues that this statement is ambiguous because there were no "further indications that Defendant continued to own the debt," Pl.'s Br. at 8, defendant had already explained that Crosstown Law had been assigned to handle the account for defendant. Ginzburg Decl. ¶ 2. Thus, when plaintiff inquired "so can I submit the dispute with you?" and defendant responded "[n]o, everything goes through them," it was unambiguous that defendant was telling plaintiff's representative that Crosstown Law's responsibilities in "handling the account for [Pinnacle]" included registering debtor disputes. When considered along with defendant's prior statement that Crosstown Law was handling the account for defendant, the

7

subsequent statement that "everything goes through them" could not reasonably be interpreted to mean that Crosstown Law had become the owner of plaintiff's debt.

Further, immediately after defendant informed plaintiff's representative that debt disputes must go through Crosstown Law, defendant offered to connect plaintiff directly to Crosstown Law. Plaintiff's representative made the phone call with the intention of disputing plaintiff's debt and, had he allowed defendant to transfer him to Crosstown Law, he would have accomplished that task before concluding the call. In light of this, it is clear that even the least sophisticated consumer would not be "uncertain as to her rights," Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998), as it was apparent that plaintiff could dispute her debt by speaking with defendant's agent, Crosstown Law.

**B. Whether Defendant Wrongfully Failed to Register Plaintiff's Dispute**

Plaintiff also argues that defendant, as the debt collector who reported plaintiff's debt to credit bureaus, "had an obligation to record the dispute when requested by Plaintiff's agent and provide information of any action taken on the account." Pl.'s Br. at 10. In other words, defendant contends that the FDCPA prohibits debt collectors from referring a debtor to a third-party agent to register a dispute, rather than registering the dispute itself.

While other courts have not addressed the precise question of whether delegating dispute servicing to a third party violates the FDCPA, it is not uncommon that debt collectors hire outside agents to perform these sort of tasks. See, e.g., Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 296 (2d Cir. 2003) (FDCPA case where lawyer sent collection letter on debt collector's behalf which stated "if appropriate please call our office to resolve this matter."); Jones-Bartley v. McCabe, Weisberg & Conway, P.C., 59 F. Supp. 3d 617, 620-21 (S.D.N.Y. 2014) (FDCPA case where law firm sent letter to plaintiff on behalf of debt collector indicating

8

that law firm should be contacted if plaintiff wished to dispute debt); <u>Johnson v. Brock & Scott,</u>

<u>PLLC</u>, No. 5:11-CV-474, 2013 WL 6058199, at *1 (E.D.N.C. Nov. 15, 2013) ("Debtors who call

Channel Group or CLS requesting information about their accounts are transferred to Brock &

Scott employees."). The court is not aware of any ruling that casts doubt on the legality of this

practice in itself. Nor does the court perceive any reason to read such a prohibition into the

FDCPA.

 The purpose of the FDCPA was to eliminate "abusive" debt collection practices. 15

U.S.C. § 1692(e). So long as it is made clear to the debtor who wishes to dispute her debt that

she is being referred to a third party for that purpose, the court sees nothing inherently abusive,

or even misleading, about simply delegating dispute servicing to a third party. It is fundamental

to the law of agency that "[f]or most purposes, a person can properly create a power in an agent

to achieve the same legal consequences by the performance of an act as if he himself had

personally acted." <u>Rai v. WB Imico Lexington Fee, LLC</u>, 802 F.3d 353, 360 (2d Cir. 2015)

(quoting Restatement (Second) of Agency § 17 cmt. a (Am. Law. Inst. 1958)). Absent a contrary

indication from Congress, there is no reason to conclude that this generally accepted principle

would not apply to the FDCPA. To hold otherwise would place an enormous burden on

creditors, as the law would effectively require that creditors personally undertake every aspect of

the debt collection process themselves. While creditors are responsible for ensuring that those to

whom they delegate do not engage in abusive practices, the FDCPA does not prohibit creditors

from entrusting third parties to assist them with the debt collection process.

### C. Whether Defendant Wrongfully Failed to Report Plaintiff's Dispute to Credit Bureaus

 In addition, plaintiff alleges that defendant violated 15 U.S.C. § 1692e by "refusing to

properly and rightfully send notice to said [credit] bureaus that Plaintiff's account was currently

9

in dispute." Am. Compl. ¶ 32. Based on the transcript of the February 27th phone call, plaintiff's direct communication with defendant ended when defendant transferred plaintiff's representative to Crosstown Law for the specific purpose of allowing plaintiff to dispute her debt. Ginzburg Decl. ¶ 2. Despite being directly transferred for this purpose, plaintiff makes no allegation that her representative stayed on the phone to speak with Crosstown Law and dispute her debt. Since defendant did not violate the FDCPA by delegating dispute servicing to a third party and specifically informed plaintiff that she would have to register her dispute with Crosstown Law, defendant had no legal obligation to report plaintiff's dispute to credit bureaus until it was properly registered with Crosstown Law. Thus, as plaintiff makes no allegation that she in fact disputed her debt in the manner defendant provided, plaintiff's claim fails because her allegations do not support the conclusion that defendant had a legal obligation to report her dispute to credit bureaus. If plaintiff or her representative did in fact speak with Crosstown Law and register plaintiff's dispute, the court grants plaintiff a short leave to amend her complaint to reflect that fact.

### D. Whether Defendant's Conduct Was Unfair or Unconscionable

Lastly, plaintiff alleges that defendant violated 15 U.S.C. § 1692f's prohibition of the use of "unfair or unconscionable means to collect or attempt to collect any debt." Am. Compl. ¶¶ 33-34. Plaintiff does not allege any additional facts in furtherance of this claim, but argues that the conduct described above violated both § 1692e and § 1692f of the FDCPA. As the court finds that defendant's conduct was not "false, deceptive, or misleading," the court similarly finds that defendant's transferring plaintiff's phone call to Crosstown Law in order to dispute her debt was not an "unfair or unconscionable" method of debt collection.

## CONCLUSION

For all of the reasons set forth above, defendant's motion to dismiss is granted. Plaintiff's claims alleging that defendant perpetuated false and misleading representations, failed to properly register plaintiff's dispute, and engaged in unfair or unconscionable conduct in collecting a debt are dismissed with prejudice. With regard to plaintiff's remaining claim that defendant failed to report that her debt was disputed to credit bureaus, plaintiff is granted leave to amend her complaint to reflect that she or her representative registered a dispute with Crosstown Law. If plaintiff elects to file an amended complaint, it must be submitted to the court no later than February 5, 2016. If plaintiff does not file an amended complaint by that time, this remaining claim will be dismissed with prejudice.

SO ORDERED.

/s/(ARR)

Allyne R. Ross
United States District Judge

Dated: January 27, 2016
Brooklyn, New York

11